## HIRAM PEASLEE *vs.* WILLIAM McLOON.

The indorsee of a promissory note may maintain an action thereon in his own name, although the property in the note continues in the indorser.

Since the *St.* of 1852, *c.* 312, § 60, the wife of a person interested in the result of a suit, but not a party to the record, is a competent witness in his behalf.

ACTION OF CONTRACT on a promissory note made by the defendant, payable to Daniel Peaslee or order, and by him indorsed in blank. The answer put in issue the indorsement of the note to the plaintiff.

At the trial in the superior court of Suffolk at March term 1859, before *Huntington*, J., Daniel Peaslee, a resident of New Hampshire, testified that the note in suit belonged to him, and that he procured it to be sued in the name of his brother, the plaintiff, (who resided in this commonwealth and had no interest in the note,) in order to avoid the necessity of getting an indorser of the writ, and to enable his wife to be a witness, the whole expenses of the suit being borne by him, and the suit being prosecuted entirely for his benefit; and that the plaintiff directed the suit to be brought in his own name. Upon this evidence, the defendant objected that the action could not be maintained in the plaintiff's name. But the judge overruled the objection, and submitted to the jury the question whether the note had been delivered by Daniel Peaslee into the possession and control of the plaintiff to be sued in his name, and the action brought and prosecuted by the plaintiff's direction and assent.

The plaintiff then called the wife of Daniel Peaslee as a witness.. The defendant objected that she was incompetent. But the judge overruled the objection and permitted her to testify, and her testimony had an important bearing on the case.

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*S. Wells*, for the defendant, to the point that the wife of Daniel Peaslee was not a competent witness, cited *Sts.*

1852, c. 312, § 60; 1857, c. 305; 1859, c. 230; Rev Sts c 96, § 11; *Tyler* v. *Ulmer*, 12 Mass. 163; *Sylvester* v. *Crapo*, 15 Pick. 92; *Griffin* v. *Brown*, 2 Pick. 304; *Barrett* v. *Barrett*, 8 Pick. 342; *Bailey* v. *Bryant*, 24 Pick. 198; *Thayer* v. *Union Tool Co.* 4 Gray, 75; *Savage* v. *Balch*, 8 Greenl. 27; *Hackett* v. *Martin*, 8 Greenl. 77; *Matthews* v. *Houghton*, 1 Fairf. 420; *Frear* v. *Evertson*, 20 Johns. 142; *Dowden* v. *Fowle*, 4 Campb. 38; 1 Greenl. Ev. §§ 172, 175, 180, 334, 335; 2 Stark. Ev. (8th Amer. ed.) 28.

*T. Willey*, for the plaintiff.

CHAPMAN, J. The note in suit was given to Daniel Peaslee, who transferred it to his brother the plaintiff, to save the trouble of getting an indorser of the writ, and to enable his wife to be a witness. He is still the owner of the note, and this action is brought in his brother's name for his sole benefit. It is objected that the plaintiff has not a sufficient title to the note to sustain this action. But the law is settled otherwise, and the instruction given to the jury was correct. *Beekman* v. *Wilson*, 9 Met. 434.

The wife of Daniel Peaslee was permitted to testify on the trial on behalf of the plaintiff, and to this the defendant excepts. The exception raises one among many interesting questions that grow out of the recent changes made by statute in the law of evidence.

At common law, she could not have been a witness. If her exclusion in such a case rested solely on the ground of a community of interest with her husband, she was admissible at the time of the trial, because the *St.* of 1852, c. 312, § 60, removes that objection in respect to him as well as in respect to her husband. She was admitted on this ground.

But there are cases in which a wife was excluded at common law on another ground, namely, that of public policy. It was to protect the confidential intercourse of private life, to prevent family discord, to relieve the wife from the risk of offending her husband, and from exposure to the temptation to testify untruly in his behalf, either through coercion or otherwise. This ground of exclusion is often stated in the books in connec-

tion with that of community of interest. Our statute, above referred to, does not remove that ground of incompetency, but leaves the law as it stood before.

The doctrine is stated very broadly in the English treatises on evidence, and in some of the adjudged cases. Yet by the general current of the authorities it is limited to the protection of confidential communications and to cases where the husband and wife were also excluded as parties or from interest. In cases where neither was so directly interested in the event of the suit as to be excluded on that account, both were allowed to testify quite freely. The rule in such cases is stated by Phillips as follows : " Although the husband and wife are not allowed to be witnesses against each other, where either is directly and immediately interested in the event of a proceeding, whether civil or criminal, yet in collateral proceedings not immediately affecting their mutual interest, their evidence is receivable, notwithstanding that the evidence of the one tends to contradict the other or may subject the other to a legal demand or even to a criminal charge." 1 Phil. Ev. *c.* 4, § 4; (4th Amer. ed.) 84. Yet the alleged consideration of policy has often as much force where the interest in the suit is indirect and collateral, and indeed where there is no interest in it, as when the interest is direct. The statement of facts by one on the stand, tending to expose the other to a legal demand or a criminal prosecution, or in contradiction to the testimony of the other, must have as much tendency to create discord in the one case as in the other. Where in the case of *Henman* v. *Dickinson,* 5 Bing. 183, the wife was called to prove that her husband had fraudulently altered a bill of exchange, her testimony must have had as much tendency to create discord as if her husband had been a party to the suit. A similar remark would apply to several other English cases, where the wife's testimony was received.

So long as all interested persons were excluded from giving evidence, there was no occasion to examine and limit the consideration of policy very accurately. The question has arisen in this case in consequence of our statute, which takes away the objection of interest. And after that objection had been

removed by statute in England, the subject of policy soon came up for discussion there.

In *Stapleton* v. *Crofts*, 18 Ad. & El. N. R. 367, it was discussed by Erle, J., who reviewed many of the cases, and expressed the opinion that by the common law it was merely identity of interest, and not considerations of policy, that excluded the wife when the husband was excluded on account of interest. The other judges were of a different opinion. But the point in issue in that case was whether the *St.* of 14 & 15 Vict. *c.* 99, made the wife competent where the husband was the party to the record. The same point was raised in *Barbat* v. *Allen*, 7 Exch. 609. Both cases turned upon the construction of the English statute, and do not therefore decide the point raised here. There is a good collection of the cases relating to the question of policy in 2 Bennett & Heard's Leading Criminal Cases, 250, in a note to *The King* v. *All Saints*, 6 M. & S. 194. See also 1 Phil. Ev. 89, note 45, in which the learned editors remark that the notion of such testimony being inadmissible from policy seems to be pretty much given up in England, though several American cases have gone on that ground.

In the discussions of this subject, the following considerations do not seem to have been noticed. If either the husband or wife was so interested that neither could testify, the release of the interest to that one made both of them competent. So the opposite party, against whom they were interested, could call either or both of them. It would seem to follow conclusively from this, that interest, and not policy, determined the question. If this be so, the statute which makes persons competent notwithstanding the interest, admits the wife as well as the husband. The *St.* of 8 & 9 Vict. *c.* 95, § 83, makes husbands and wives competent and compellable to give evidence for and against each other in the county courts; and by *St.* 16 & 17 Vict. *c.* 83, they are made competent and compellable to testify on behalf of either party to a suit in the higher courts, except in criminal cases and cases of adultery, and except that they cannot be called to disclose any communications made by either to the other during marriage. By our Gen. Sts. *c.* 131,

§ 14, husband and wife may testify for and against each other when the wife is a party or one of the parties ; only they shall not be allowed to testify as to private conversations with each other.   It thus appears that both here and in England the policy of protecting the wife in such cases is now regarded as unimportant in comparison with the policy of extending the means of ascertaining truth in the trial of causes.   And undoubtedly she stands in less need of protection now than formerly.   The relation of husband and wife has been greatly modified since the early days of the common law.   The old doctrines respecting his right to chastise and imprison her for disobedience have become obsolete.   His power to control her by means of his exclusive right to their children is so far destroyed that the decrees of courts in regard to the custody of children now have respect to the interests and feelings of all the parties.   Our recent legislation gives to her a reasonable degree of pecuniary independence, to say the least.   But still more has been done for her by our system of universal education.   It gives her a social equality with her husband, and in many cases she is his acknowledged superior.   He therefore becomes accustomed to expect from her a free and independent expression of opinions, and a fearless regard to truth in the statement of facts.   It is not now to be supposed that any man would expect or desire his wife to pervert or conceal the truth, when called into court to testify on oath.   The idea of family discord growing out of such testimony, merely because it is adverse to his pecuniary interest, ought to be obsolete.   Much less is personal violence and restraint to be feared.

Our conclusion is that, in a case like the present, the reason for excluding the testimony of the wife always was identity of interest with the husband, and nothing else ; and that the statute, which makes the husband competent notwithstanding his interest, makes his wife competent also.   And we think that the argument against her admissibility on the ground of policy has not now the force which it formerly had, when greater ignorance and rudeness prevailed, and when the power of the husband over her was much greater than it now is.

*Exceptions overruled.*